UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Norfolk Division)

| | | |
|---|---|---|
| SUNSTONE INFORMATION DEFENSE, INC. | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action: 2:21-cv-00050-RCY-LRL |
| F5 NETWORKS, INC. and CAPITAL ONE FINANCIAL CORPORATION, | ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF SUNSTONE INFORMATION DEFENSE, INC.'S
OPPOSITION TO DEFENDANT F5 NETWORK, INC.'S
MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

Plaintiff SunStone Information Defense, Inc. ("SunStone"), by counsel, respectfully states as follows in opposition to F5 Network, Inc.'s ("F5") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Dkt. 27) and Memorandum in Support (Dkt. 28) (collectively "Motion to Transfer").

I.    INTRODUCTION

F5's Motion to Transfer should be denied because F5 has not met and cannot meet its heavy burden of clearly showing that transfer would be "[f]or the convenience of parties and witnesses" and "in the interest of justice."  *See* 28 U.S.C. § 1404(a).

F5 does not contend that SunStone has chosen an improper forum for its patent infringement claims, only that F5 prefers to be in another venue.  Under this Court's precedent, it "should rarely disturb a plaintiff's choice of forum unless the balance of hardships *clearly favor[s]* transfer." *JTH Tax, Inc. v. Callahan*, No. 2:12-cv-691, 2013 U.S. Dist. LEXIS 84684, at *8 (E.D. Va. June 5, 2013) (emphasis added) (quoting *Va. Innovation Sciences, Inc. v. Samsung Electronics Co.*, No. 2:12-cv-548, 2013 U.S. Dist. LEXIS 31626, at *2 (E.D. Va. Mar. 6, 2013)); *see Akers v. Norfolk & W. Ry. Co.,* 378 F.2d 78, 80 (4th Cir.1967) (recognizing "the primary right of the plaintiff to choose his forum, a selection not easily to be overthrown").  As the party seeking transfer, F5 "bears the burden of proving that the circumstances of the case are *strongly in favor* of transfer." *Bluestone Innovations, LLC v. LG Elecs., Inc*., No. 2:12-cv-503, 2013 U.S. Dist. LEXIS 57124, at *10 (E.D. Va. Apr. 12, 2013) (emphasis added) (quoting *Heinz Kettler GmbH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010)).

The facts and circumstances of this case are such that F5 simply cannot meet its burden of showing that "the interest of justice and convenience of the parties and witnesses justify transfer to" the Northern District of California.  *JTH Tax*, 2013 U.S. Dist. LEXIS 84684, at *3 (quoting *Koh v. Microtek Int'l, Inc*., 250 F. Supp. 2d 627, 630 (E.D. Va. 2003)).  To the contrary, each of

1

the four factors that this Court considers in deciding whether transfer would be in "the interest of justice and convenience of the parties and witnesses"—"(1) plaintiff's initial choice of venue; (2) witness convenience and access; (3) the convenience of the parties; and (4) the interest of justice," *JTH Tax*, 2013 U.S. Dist. LEXIS 84684, at *8—weighs against transfer to the Northern District of California.

The first factor, the plaintiff's initial choice of venue, warrants keeping the case in the Eastern District of Virginia for a number of reasons. SunStone's connections to Virginia, and the greater Washington, D.C. Metro Area, go back decades. As set forth in more detail below, much, if not all, of Dr. Ford's efforts to market and sell SunStone's products have taken place in Virginia, Washington, D.C., and Maryland. The Eastern District of Virginia and surrounding area is where SunStone was first informed of Shape Security, Inc.'s ("Shape") willful infringement of SunStone's patents asserted in the Complaint ("Asserted Patents"). Indeed, several third parties involved in practicing the patented methods are in the Eastern District of Virginia, as are witnesses relevant to SunStone's claim of willfulness. Moreover, Defendant Capital One Financial Corporation ("Capital One") is based in Virginia. Capital One is more than a mere customer that simply buys a vendor's product. Capital One actively investigated SunStone's products and, in doing so, became aware of SunStone's confidential information and patented technology. Despite that knowledge, Capital One went on to incorporate F5's products into the operation of the Capital One products now accused of infringement ("Accused Capital One Products"). That makes Capital One an accused willful and direct infringer.

Because the infringement is occurring in Virginia, the second, third, and fourth factors, "(2) witness convenience and access; (3) the convenience of the parties; and (4) the interest of justice," also weigh against transfer. Indeed, F5 ignores the substantial number of key party and

non-party witness in and around the Eastern District of Virginia with likely relevant information regarding SunStone's allegations of willful infringement.

In short, F5 cannot meet its high burden of showing that "the balance of hardships *clearly favor* transfer"[1] and that "the circumstances of the case are *strongly in favor* of transfer."[2]  Its motion, therefore, should be denied.

## II.   BACKGROUND

### A.   SunStone and Its Contacts in the Eastern District of Virginia

SunStone is a Delaware corporation headquartered in Jamestown, Ohio. Declaration of Christopher E. Hanba ("Hanba Decl.), Exh. 1 (Ohio License to Transact Business).[3] SunStone offers several products for the rapidly developing cyberthreat prevention market, including mobile and desktop solutions.  Ford Decl., ¶ 3.  SunStone is still in business and provides products aimed at network and device security.  *Id.*, ¶ 4.

Beginning in the early to mid-2000s, financial trojan horses, such as Zeus and SpyEye were of particular relevance.  Complaint, Dkt. 1, ¶ 55 ("Compl.").  SunStone developed a successful defensive strategy that serves as the basis for the Asserted Patents.  *Id.*, ¶ 56.  SunStone's patented approach has proven to be almost impenetrable to malicious system attacks.  *Id.*

SunStone's connections to Virginia, and the greater Washington, D.C. metro area, go back decades.  SunStone's founder, Dr. David Ford, is a pioneer in the industry and former employee

---

[1]   *JTH Tax*, 2013 U.S. Dist. LEXIS 84684, at *8 (emphasis added).

[2]   *Bluestone Innovations*, 2013 U.S. Dist. LEXIS 57124, at *10 (emphasis added).

[3]   To be closer to Washington, D.C. and family, SunStone has been in the process of relocating for the past six months.  Declaration of Dr. David Ford ("Ford Decl.") ¶ 5.  However, due to administrative matters in California SunStone was unable to formally dissolve the company.  *Id.*  SunStone has filed for dissolution in California and relocated its headquarters to Ohio.  *Id.*, ¶ 5-6.  Counsel for F5 was notified prior to the filing of F5's motion that "SunStone has been in the process of re-domiciling to Jamestown, Ohio."  Hanba Decl., Exh. 2 (email from C. Hanba to S. Brun dated Mar. 11, 2021 ("Regarding your inquiry as to Dr. Ford, as I may have previously mentioned, SunStone has been in the process of re-domiciling to Jamestown, Ohio.").

of the United States government. *Id.*, ¶ 42. Dr. Ford is a former employee of the National Security Agency ("NSA"), based in the Washington, D.C. Metro Area, and a graduate of the NSA's three-year Postdoctoral cryptographic program. *Id.*; Ford Decl., ¶ 9. While at the NSA, he led a team of 50 cyber security experts to field groundbreaking technology. *Id.* After working at the NSA, Dr. Ford was the lead scientist for research into information assurance applications for DISA at the Naval Postgraduate School ("NPS"). Compl., ¶ 42; Ford Decl., ¶ 10. Dr. Ford subsequently, joined the NPS faculty. Compl., ¶ 42; Ford Decl., ¶ 10. Dr. Ford spent over 13 years working with the United States government. Ford Decl., ¶ 11. Throughout Dr. Ford's career he has also consulted for a variety of United States government organizations such as the Department of Commerce, the Critical Infrastructure Assurance Office, the eCrimes Task Force in NYC, and the Taliban Sanctions Committee at the United Nations. Compl., ¶ 43; Ford Decl., ¶ 12.

Based on Dr. Ford's familiarity with the United States government, most, if not all, of SunStone's business development efforts have been focused in Virginia, Washington, D.C., and Maryland. Ford Decl., ¶ 17. And in fact, SunStone's first sale of technology embodying the Asserted Patents was to the NSA. Compl., ¶ 58; Ford Decl., ¶ 18. It is during Dr. Ford's work in the greater Washington, D.C. Metro Area that SunStone first learned from third parties of the similarities between the products accused of infringement in this case ("Accused Products") and SunStone's patented technology. Ford Decl., ¶ 24. Accordingly, several of SunStone's witnesses who are key to proving its allegations of willfulness against F5 and Capital One are located in and around the Eastern District of Virginia.

### B. F5's Contacts in the Eastern District of Virginia.

SunStone accuses F5 of willfully infringing the Asserted Patents. The Accused Products incorporate technology developed by Shape. On January 14, 2020, SunStone's counsel sent Shape notice that Shape was "infringing some of Sunstone's critical intellectual property, and in

particular Shape Security [was] infringing some of Sunstone's patents related to network and device security." *See* Compl., Exh. 37 (the "Notice Letter"). On January 24, 2020, F5 acquired Shape. The Accused Products include legacy Shape products and services, and current F5 products, which F5 continues to sell.

F5 has a long history of conducting substantial business, including selling products and services, in the Eastern District of Virginia. Dkt. 25, F5 Answer to Complaint ("F5 Answer"), ¶ 11 ("F5 admits that it sells products and services from its offices located in Virginia."); *id*., ¶ 12 ("F5 has a regional office at 11911 Freedom Dr. #950, Reston, Virginia 20190."); *id*., ¶ 32 ("F5 has conducted business in the Eastern District of Virginia."). For example, F5 contracts with Carahsoft Technology Corp. ("Carahsoft"), based in Reston, Virginia, as a reseller of F5 products and services, including the Accused Products. *Id*., ¶ 33 ("F5 admits it contracts with Carahsoft Technology Corp. ("Carahsoft") as a reseller of F5 products and services, which may include the Accused Products."). According to Carahsoft:

> Carahsoft Technology Corp. has been pleased to support F5 Networks in the public sector for nearly 10 years. Today, Carahsoft helps to conduct 95% of F5 Networks' federal business and was recently named F5's Federal Partner of the Year in 2018. Our extensive capabilities in sales, marketing, and renewal support have continued to generate demand and elevate F5's federal business since the inception of our partnership in 2010. A healthy and productive collaboration with F5's value-added reseller community has been vital to our success. We help this community align with F5's latest solutions, sales plays, use cases, and any updates to position F5 in the most effective way possible within the public sector.

Compl., Exh. 3 (F5 Networks Carahsoft, *available at* https://www.carahsoft.com/f5-networks#partners (last visited Jan. 15, 2021).).

Carahsoft's training experience, purchase of the Accused Products, and implementation of the Accused Products, are therefore highly relevant to SunStone's claims of patent infringement. Purchases by federal agencies of sophisticated systems such as those covered by SunStone's patented technology—which is Carahsoft's focus on behalf of F5—are made through agency

5

headquarters in the Virginia and Washington, D.C. area.  *See, e.g.*, Hanba Decl., Exh. 3 (Vice Admiral Nancy A. Norton of the Joint Regional Security Stack discussing management procedures); *id.*, Exh. 4 (DISA press release discussing rollout procedures by The Defense Information Systems Agency); Ford Decl., ¶¶ 18-19.  These systems are tested and validated here before being implemented or "rolled out" across agency facilities throughout the U.S.  *Id*.  F5 therefore has significant commercial activity unique to this District, the Accused Products, and the Asserted Patents.

Moreover, F5 has developed the "Find a Unity+ Partner" program, which includes at least thirteen resellers in this District with information likely relevant to SunStone's claims.  F5 Answer, ¶ 34 ("F5 admits its UNITY Partner Program includes hundreds of regional and global partners including partners based in Virginia.").  According to F5:

> F5's UNITY Partner Program includes regional and global partners that build and deliver best-in-class IT solutions for customers of all sizes.

> As an F5 UNITY Partner, participating companies have invested in networking, security, cloud, application development and deployment to help our clients solve the most complex application delivery challenges.

Compl., Exh. 4.

In addition, several third parties located in the District, including those contacted by Dr. Ford, incorporate F5 technology that is relevant to SunStone's claims of willful patent infringement.  For example, a search of current job openings in Virginia shows that numerous companies implement the relevant F5 technology.  *See, e.g.*, Compl., Exh. 5 (Listing 19 relevant job openings in Virginia utilizing Accused Products).  As detailed below, several key individuals at companies and government agencies in and around the Eastern District of Virginia have relevant information about F5's knowledge related to its willful infringement of the Asserted Patents.

6

**C.     Capital One and Its Contacts in the Eastern District of Virginia.**

Capital One is headquartered in McLean, Virginia. Capital One also has corporate offices in Richmond, Virginia. Both operations are in the Eastern District of Virginia.

SunStone accuses Capital One of willfully infringing the Asserted Patents. Capital One is not a "mere customer," nor is it "gratuitously" joined as claimed by F5. Mot. at 1. Rather, Capital One is a willful infringer that developed the Accused Capital One Products in conjunction with Shape (now F5). Capital One's previous relationship with SunStone, together with Capital One's subsequent business relationship with F5, all of which have their origins in the Eastern District of Virginia, form the basis of SunStone's willfulness allegations. *See* Compl., ¶¶ 201-03.

Specifically, in May 2015, Jeff Newman, Chairman of SunStone's Board of Directors at the time, reached out to Tony Spinelli at Capital One on behalf of SunStone. Compl., ¶¶ 197-98. Over the course of the next three months, SunStone spoke with or presented via demonstration the confidential SunStone technology and intellectual property to numerous individuals at Capital One. *Id*. at 199. SunStone was informed on August 23, 2015, that Capital One did "not wish to further engage in discussions with SunStone." *Id*. at 200. As confirmed by F5's counsel, Capital One and Shape began a business relationship thereafter. Hanba Decl., Exh. 5 (email from S. Brun to C. Hanba dated Mar. 8, 2021 (highlighting in original)).

## III.    LEGAL STANDARD

The Court applies the law of the Fourth Circuit in decisions related to venue. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). "The decision whether to grant a motion to transfer venue is within the sound discretion of the district court." *Beam Laser Sys., Inc. v. Cox Commc'ns*, 117 F. Supp. 2d 515, 517 (E.D. Va. 2000) (denying motion to transfer). The factors to consider in a motion to transfer under 28 U.S.C. § 1404(a) are: "(1) ease of access to sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of

witnesses; (4) the availability of compulsory process; (5) the interest in having local controversies decided at home; (6) in diversity cases, the court's familiarity with the applicable law; and (7) the interest of justice." *Samsung Elecs. Co., Ltd. v. Rambus Inc.*, 386 F. Supp. 2d 708, 715 (E.D. Va. 2005) (quoting *One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp.*, 312 F. Supp. 2d 824, 828 (E.D. Va. 2004)).   After the Court determines that the case could have been brought in the proposed transferee forum, *Fox Group, Inc. v. Cree, Inc.*, 749 F. Supp. 2d 410, 413 (E.D. Va. 2010), courts in this district consider: (1) plaintiff's choice of venue, (2) convenience of the parties and witnesses, and (3) the interests of justice. *See, e.g.*, *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010) (denying motion to transfer).   In addition to weighing these three factors, the Court examines the specific facts of each case to determine whether the litigation should be uprooted to another forum. *See Samsung Elecs.*, 386 F. Supp. 2d at 716.   In patent cases, where there are "significant connections between a particular venue and the events that give rise to a suit, this factor should be weighed in that venue's favor." *In re Hoffmann-LaRoche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).

## IV.    ARGUMENT

### A.    SunStone's Choice of Venue Carries "Substantial Weight" Because There Is a "Substantial Relation" Between Virginia and the Alleged Infringement.

SunStone's choice of the Eastern District of Virginia is entitled to substantial weight. *See Bd. of Trustees v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1256 (E.D. Va. 1988) (denying motion to transfer).   Even where it "is neither the nucleus of operative facts, nor the plaintiff's home forum, . . . the plaintiff's choice of forum is certainly a relevant consideration so long as there is a connection between the forum and the plaintiff's claim that reasonably and logically supports the plaintiff's decision to bring the case in the chosen forum." *Samsung Elecs.*, 386 F. Supp. 2d at 716.   Here, there is a substantial connection to the Eastern District of Virginia.

8

Contrary to the caselaw cited by F5, SunStone is not simply a holder of the Asserted Patents with no contact to the Eastern District of Virginia, but instead is an active developer of the technology protected by those patents.  Ford Decl,, ¶ 4.  SunStone's connections to Virginia and the greater Washington, D.C. Metro Area, span decades.  Much, if not all, of Dr. Ford's efforts to market and sell SunStone's products have taken place in Virginia and the greater Washington, D.C. Metro Area and it was while marketing and selling its products there that SunStone was informed by third parties of the facts that form the basis for SunStone's willfulness allegations against F5.  *Id*., ¶¶ 17, 24.

In addition, the Eastern District of Virginia is the "center of the accused activity."  *Beam Laser Sys.,* 117 F. Supp. 2d at 518-19.  There are numerous connections that reasonably and logically support litigation in the Eastern District of Virginia, such as F5 and Capital One's acts of willful infringement in Virginia, F5 and Capital One's substantial presence in Virginia, third-party witnesses based in Virginia and the Washington, D.C. Metro Area—including F5 and SunStone customers and potential customers, F5 resellers and government procurement offices—F5 and Capital One party witnesses, and other party-aligned witnesses.  *See* Part II(A)-(C), *supra*.  As such, there is no reason to set aside the strong presumption that the case should stay in SunStone's chosen forum.

## B. The Convenience of, and Access to, Critical Witnesses Both Weigh in Favor of Keeping This Case in the Eastern District of Virginia.

Witness convenience and access are "of considerable importance in determining whether a transfer of venue is appropriate."  *JTH Tax*, 2013 U.S. Dist. LEXIS 84684, at *10 (quoting *Samsung Elecs.*, 386 F. Supp. 2d at 718).  Shifting the inconvenience from some witnesses to others will not justify a transfer in venue.  *Id*. at 14-15 (citing *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 737 (Apr. 2, 2007, E.D. Va.)).  A party asserting witness inconvenience "has the burden

to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." *Koh,* 250 F. Supp. 2d at 636. Additionally, "the convenience of non-party witnesses should be afforded greater weight [than the convenience of party witnesses] in deciding a motion to transfer." *Samsung Elecs.,* 386 F. Supp. 2d at 718. As the moving party, F5 must demonstrate that the Eastern District of Virginia is "an inconvenient forum in which to litigate, not simply that the [Northern District of California] would be more convenient." *Id.* at 718 n.15.

In this case, the unaffiliated third-party witnesses to whom the Eastern District of Virginia affords greater access, and for whom the Eastern District of Virginia is more convenient, include customers who requested and received the infringing products services from F5, potential customers of SunStone and F5, United States government agencies, F5 resellers and government procurement offices unique to this area, and customers who proceeded with F5's Accused Products over SunStone's technology (including current and former Capital One employees).

Moreover, the subpoena power of a federal district court over a non-party witness extends only within the state where the federal court sits or within 100 miles of that court if that witness is not located within the state. FED. R. CIV. P. 45(c)(1)(A). As detailed below, the expected third-party witnesses are within the subpoena power of the Eastern District of Virginia and are not all within the subpoena power of the Northern District of California. Moreover, the only third-party witnesses identified by F5 have information duplicative of current F5 employees. To move the matter to California would make it less likely that key witnesses could be compelled to attend trial.

### 1. F5 Failed to Provide Sufficient Evidence to Meet Its Burden.

F5 was required to explain not only the potential witnesses' relation to the cause of action, but why those witnesses would be inconvenienced without a transfer. *See JTH Tax*, 2013 U.S. Dist. LEXIS 84684, at *11-12 ("Notably, Defendant provided no affidavits from potential

10

witnesses in support of his initial motion and memorandum. . . . Although Defendant's reply brief expressly identifies two witnesses that would be called by the defense at trial and includes affidavits from such individuals, the information in such affidavits is both tardy and insufficient to warrant transferring this case."); *Heinz Kettler,* 750 F. Supp. 2d at 668 ("The party asserting witness inconvenience 'has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and *the degree of inconvenience.*'") (emphasis added); *Beam Laser Sys.,* 117 F. Supp. 2d at 518; *see also Nationwide Mut. Ins. Co.*, 2010 WL 2520973, at \*3 ("[T]he 'party seeking such discretionary transfer 'bears the burden of demonstrating that the balance of convenience among the parties and witnesses is *strongly* in favor of the forum to which transfer is sought.'") (emphasis in original).

F5's motion and memoranda at best demonstrates why the Northern District of California would be more convenient for *its witnesses* and provide for easier access to F5's corporate files. F5 does not demonstrate why the Eastern District of Virginia is an "inconvenient forum." Notably, F5 does not proffer, by affidavit or other evidence, sufficient details regarding the potential testimony of its proposed witnesses such that the Court can assess the materiality or cumulativeness of such testimony and/or the extent of the inconvenience.

Instead, F5 focuses primarily on the convenience of its potential witnesses. F5 broadly asserts that "key witnesses" are "concentrated in or near California." Mot. at 8. But, F5 has not included an affidavit from the witnesses suggesting that traveling to Norfolk would be "inconvenient." As the party asserting inconvenience, F5's broad statements fall far short of the requirement that they "proffer by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony" to permit the Court to assess whether such testimony is "central to

a claim," as well as whether it is "merely cumulative" to testimony offered by other witnesses. *Samsung Elecs.*, 386 F. Supp. 2d at 718.

### 2. Party Customers and Potential Customers in and around Virginia, Will Be Key Third-Party Witnesses.

F5 asserts that transfer is proper because it claims that some of the employees most knowledgeable about the accused products live and work in California, but it ignores the overwhelming number of non-party witnesses based in and around the Eastern District of Virginia. "[W]hen balancing the convenience of witnesses, the 'convenience of non-party witnesses should be afforded greater weight than the convenience of party witnesses and witnesses 'closely aligned with a party,' because the latter groups are 'presumed to be more willing to testify in a different forum.'" *JTH Tax*, 2013 U.S. Dist. LEXIS 84684, at *14-15 (quoting *Samsung Electronics Co. v. Samsung Elecs.*, 386 F. Supp. 2d at 718).

As described above, F5 and Capital One are willfully infringing in this District by offering and performing services that infringe SunStone's asserted patents. The recipients of these offers and services—including the United States government—are key witnesses that SunStone will use to prove willful infringement at trial. For example, F5, directly or through its agents, sells and offers for sale infringing products to federal agencies headquartered in Virginia and Washington, D.C. These sales can be substantial and they are unique to this area. Ford Decl., ¶¶ 18-19. This fact alone weighs in favor of denying transfer. *Hoffmann-LaRoche*, 587 F.3d at 1338 ("The district court also disregarded *Volkswagen* and *Genentech* in holding that the Eastern District of North Carolina had no more of a local interest in deciding this matter than the Eastern District of Texas. While the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue, *TS Tech,* 551 F.3d at 1321, if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's

favor. *Genentech,* 566 F.3d at 1347; *Volkswagen,* 545 F.3d at 317–18."). Potential witnesses within this District with relevant knowledge about these issues include one or more of the following:[4]

- **Carahsoft Technology Corp**. of Reston, Virginia. Hanba Decl., Exh. 6; Compl., ¶ 33. Carahsoft has relevant information about the sale and implementation of F5's Accused Products, particularly regarding sales to and implementation by federal agencies. *See* Part II(B) *supra*.

- **Dimension Data** of Reston, Virginia, which F5 identifies as a "Value Added Reseller – Gold." Hanba Decl., Exh. 6. Dimension Data has relevant information about the sale and implementation of F5's Accused Products.

- **ePlus** of Herndon, Virginia, which F5 identifies as a "Guardian-Platinum." *Id*. ePlus has relevant information about the sale and implementation of F5's Accused Products.

- **Iron Bow Technologies** of Chantilly, Virginia, which F5 identifies as a "Value Added Reseller-Silver" *Id*. Iron Bow has relevant information about the sale and implementation of F5's Accused Products.

- **SLAIT Consulting** of Virginia Beach, Virginia, which F5 identifies as a "Value Added Reseller-Platinum" *Id*. SLAIT has relevant information about the sale and implementation of F5's Accused Products.

- **StorageHawk** of Arlington, Virginia, which F5 identifies as a "Value Added Reseller-Silver") *Id*. StorageHawk has relevant information about the sale and implementation of F5's Accused Products.

- **ThunderCat Technology-HQ** of Reston, Virginia, which F5 identifies as a "Value Added Reseller-Silver" *Id*. ThunderCat has relevant information about the sale and implementation of F5's Accused Products.

- **Nami Mufti**, former Head of Security Architecture, Innovation and Acquisitions at Capital One during Capital One's exchange of information with SunStone. Hanba Decl., at 34 (LinkedIn Profile). Mr. Mufti is currently the Head of Security and Productivity Engineering at Spotify in Richmond, Virginia. *Id*. Mr. Mufti has knowledge about Capital One's dealings with SunStone, the SunStone technology, if any, used by Capital One in conjunction with F5, and Capital One's business dealings with F5. Compl., ¶ 199.

---

[4]    Exhibit 39 is a summary of non-party witnesses who possess relevant information and are located in Virginia or the surrounding area.

13

- **Tony Spinelli**, former Senior Vice President, Chief Information Security Officer at Capital One. Hanba Decl., Exh. 35 (LinkedIn Profile). Mr. Spinelli is currently employed as the Chief Information Officer at Urban One, Inc. in the Washington, D.C. Metro Area. *Id.* Mr. Spinelli has knowledge about Capital One's dealings with SunStone, Capital One's knowledge of the Asserted Patents, the SunStone technology, if any, used by Capital One in conjunction with F5. Compl., ¶¶ 37, 197-199.

Moreover, most, if not all, of Dr. Ford's efforts to market and sell SunStone's products have taken place in Virginia and the Washington, D.C. Metro Area. SunStone was informed by third parties in this area of the similarities between the SunStone solution and the Shape product. Witnesses from these companies will be crucial potential witnesses for SunStone's willfulness case in showing that Shape knew of SunStone's intellectual property. These witnesses include at least one or more of the following (in alphabetical order):

- **Carlos Blazque**z, Cyber Security Engineer, Project Manager at The MITRE Corporation in Centreville, Virginia. Hanba Decl., Exh. 7 (LinkedIn Profile). Dr. Ford was in contact with Mr. Blazquez regarding potential implementation of SunStone's products. Ford Decl., ¶ 22. Mr. Blazquez has information relevant to SunStone and F5's sales and marketing efforts related to F5's willful infringement of the Asserted Patents.

- **Dave Bryan**, formerly President, Defense Systems Group and Corporate Executive Vice President at Mantech International in Chantilly, Virginia. Hanba Decl., Exh. 8 (LinkedIn Profile). Dr. Ford was in contact with Mr. Bryan at Mantech International regarding potential implementation of SunStone's products. Ford Decl., ¶ 22. Mr. Bryan is currently employed as President and CEO at Bryan Business Management and Technology in New Alexandria. Hanba Decl., Exh. 8 (LinkedIn Profile). Mr. Bryan has information relevant to SunStone and F5's sales and marketing efforts related to F5's willful infringement of the Asserted Patents.

- **Chris Catron**, former DOJ - United States Marshals Mission Modernization Security and Technical Architecture Lead at Accenture Federal, in Washington, D.C. Hanba Decl., Exh. 9 (LinkedIn Profile). Dr. Ford was in contact with Mr. Catron at Accenture Federal regarding potential implementation of the potential implementation of SunStone's products. Ford Decl., ¶ 22. Mr. Catron is currently employed as Senior Director, Global Enterprise Architecture at PwC in Washington, D.C. Hanba Decl., Exh. 9 (LinkedIn Profile). Mr. Catron has information relevant to SunStone and F5's sales and marketing efforts related to F5's willful infringement of the Asserted Patents.

- **Peter Dinsmore**, Professional Staff at The Johns Hopkins Applied Physics Laboratory (APL) in Ellicott City, Maryland. Hanba Decl., Exh. 10 (LinkedIn Profile). Dr. Ford was in contact with Mr. Dinsmore regarding potential implementation of SunStone's products.

14

Ford Decl., ¶ 22. Mr. Dinsmore has information relevant to SunStone and F5's sales and marketing efforts related to F5's willful infringement of the Asserted Patents.

- **Greg Dixon**, former Senior Vice President, Advanced Cyber Operations at KeyW Corporation (now Jacobs) in Hanover, MD. Hanba Decl., Exh. 11 (LinkedIn Profile). Dr. Ford was in contact with Mr. Dixon at KeyW regarding potential implementation of SunStone's products. Ford Decl., ¶ 22. Mr. Dixon is currently employed as President, Cyber Solutions at EverWatch in Columbia, Maryland. Hanba Decl., Exh. 11 (LinkedIn Profile). Mr. Dixon has information relevant to SunStone and F5's sales and marketing efforts related to F5's willful infringement of the Asserted Patents.

- **Murray W. Kenyon,** Senior Vice President, BITS Technology Risk Management, Financial Services Roundtable at the U.S. Chamber of Commerce in Washington, D.C. Hanba Decl., Exh. 23 (Profile). Dr. Ford was in discussions with Dr. Kenyon regarding implementation of SunStone's technology at the U.S. Chamber of Commerce and recommended adoption of SunStone's technology by financial institutions in the United States. Ford Decl., ¶ 22. Mr. Kenyon has information relevant to SunStone and F5's sales and marketing efforts related to F5's willful infringement of the Asserted Patents.

- **Al Kinney**, former Director, Strategy at Hewlett Packard Enterprise in the Washington, D.C. Metro Area. Hanba Decl., Exh. 12 (LinkedIn Profile). Dr. Ford was in contact with Mr. Kinney at Hewlett Packard Enterprise regarding potential implementation of SunStone's products. Ford Decl., ¶ 22. Mr. Kinney is currently employed as Vice President at Global Cyber Mission Training Programs in Severna Park, Maryland. Hanba Decl., Exh. 12 (LinkedIn Profile). Mr. Kinney has information relevant to SunStone and F5's sales and marketing efforts related to F5's willful infringement of the Asserted Patents.

- **Dave Merkel**, former Chief Technology Officer at FireEye, Inc. in Reston, Virginia. Hanba Decl., Exh. 13 (LinkedIn Profile). Dr. Ford was in contact with Mr. Merkel at FireEye regarding potential implementation of SunStone's products. Ford Decl., ¶ 22. Mr. Merkel is currently employed as Co-founder and Chief Executive Officer at Expel in Herndon, Virginia. Hanba Decl., Exh. 13 (LinkedIn Profile). Mr. Merkel has information relevant to SunStone and F5's sales and marketing efforts related to F5's willful infringement of the Asserted Patents.

- **John Nagengast**, Executive Director at AT&T Federal, in Columbia, Maryland. Hanba Decl., Exh. 14 (LinkedIn Profile). Dr. Ford was in contact with Mr. Nagengast regarding potential implementation of SunStone's products. Ford Decl., ¶ 22. Mr. Nagengast has information relevant to SunStone and F5's sales and marketing efforts related to F5's willful infringement of the Asserted Patents.

- **Robert Parlock**, former Chief Technologist at Leidos (formerly Science Applications International Corporation), in Reston, Virginia. Hanba Decl., Exh. 16 (LinkedIn Profile). Dr. Ford was in contact with Mr. Parlock at Science Applications International Corporation regarding potential implementation of SunStone's products. Ford Decl., ¶ 22. Mr. Parlock is currently employed as Vice President of Engineering at Engineering Solutions, Inc. in

15

Laurel, Maryland. Hanba Decl., Exh. 16 (LinkedIn Profile). Mr. Parlock has information relevant to SunStone and F5's sales and marketing efforts related to F5's willful infringement of the Asserted Patents.

- **Matt Rausch**, Blockchain Lead, Technology Lead, and Solutions Architect at Booz Allen Hamilton in Sykesville, Maryland. Hanba Decl., Exh. 18 (LinkedIn Profile). Dr. Ford was in contact with Mr. Rausch regarding potential implementation of SunStone's products. Ford Decl., ¶ 22. Mr. Rausch has information relevant to SunStone and F5's sales and marketing efforts related to F5's willful infringement of the Asserted Patents.

- **James Schatz**, Head, Research and Exploratory Development at The Johns Hopkins Applied Physics Laboratory (APL) in Ellicott City, Maryland. Hanba Decl., Exh. 19 (Biography). Dr. Ford was in contact with Mr. Schatz regarding potential implementation of SunStone's products. Ford Decl., ¶ 22. Mr. Schatz has information relevant to SunStone and F5's sales and marketing efforts related to F5's willful infringement of the Asserted Patents.

- **Justin Wilder**, Vice President, Technical Staff at In-Q-Tel in Ashburn, Virginia. Hanba Decl., Exh. 20 (LinkedIn Profile). Dr. Ford was in contact with Mr. Wilder regarding potential implementation of SunStone's products. Ford Decl., ¶ 22. Mr. Wilder has information relevant to SunStone and F5's sales and marketing efforts related to F5's willful infringement of the Asserted Patents.

SunStone also had a business relationship with Extreme Networks to coordinate product sales to current and potential customers in Virginia and the Washington, D.C. Metro Area. Ford Decl., ¶ 23. SunStone worked with individuals in Herndon, Virginia and Mount Airy, Maryland:

- **Kristopher Orjada**, Director of Product Management at Extreme Networks, Inc. in Herndon, Virginia. Hanba Decl., Exh. 15 (LinkedIn Profile). SunStone and Extreme Network had a business relationship to coordinate product sales to current and potential customers in Virginia and the Washington, D.C. Metro Area. Ford Decl., ¶ 23. Mr. Orjada has information relevant to SunStone and F5's sales and marketing efforts and SunStone's attempt to coordinate products with Extreme Networks.

- **Michael Rash**, Director, Security and Compliance at Extreme Networks, Inc. in Herndon, Virginia and Mount Airy, Maryland. Hanba Decl., Exh. 17 (LinkedIn Profile). SunStone and Extreme Network had a business relationship to coordinate product sales to current and potential customers in Virginia and the Washington, D.C. Metro Area. Ford Decl., ¶ 23. Mr. Rash has information relevant to SunStone and F5's sales and marketing efforts and SunStone's attempt to coordinate products with Extreme Networks.

Moreover, the SunStone implementation at the NSA is a commercial embodiment of the Asserted Patents. Because of the particular circumstances of the relationship with the NSA,

SunStone does not have a copy of the NSA product. The SunStone implementation at the NSA and relevant witnesses regarding SunStone's United States government NSA contract are located within the subpoena power of this District. In addition, these government agencies were contacted by Shape in direct competition with SunStone. The following non-party witnesses will provide crucial testimony of Shape's willful infringement of the asserted patents:

- **Dr. Patrick Dowd**, former Chief Technical Officer, Chief Architect, Director's Science Advisor at NSA. Hanba Decl., Exh. 21 (LinkedIn Profile). Dr. Ford was in contact with Dr. Dowd regarding SunStone's implementation of the patented technology at the NSA. Ford Decl., ¶ 21. Dr. Dowd is currently employed as the Director, Information Security at Amazon Web Services in Herndon, Virginia. Hanba Decl., Exh. 21 (LinkedIn Profile). Dr. Dowd has information relevant to SunStone's technology and information relevant to SunStone and F5's sales and marketing efforts related to F5's willful infringement of the Asserted Patents.

- **Craig Harber**, former Technical Director the NSA. Hanba Decl., Exh. 22 (LinkedIn Profile). Dr. Ford was in contact with Mr. Harber regarding SunStone's implementation of the patented technology at the NSA. Ford Decl., ¶ 21. Mr. Harber is currently employed as the Chief Technology Officer at Fidelis Cybersecurity in Bethesda, Maryland. Hanba Decl., Exh. 22 (LinkedIn Profile). Mr. Harber has information relevant to SunStone's technology and information relevant to SunStone and F5's sales and marketing efforts related to F5's willful infringement of the Asserted Patents.

- **Neil Kittleson**, former Senior Executive the NSA. Hanba Decl., Exh. 24 (LinkedIn Profile). Dr. Ford was in contact with Mr. Kittleson regarding the SunStone's implementation of the patented technology at the NSA. Ford Decl., ¶ 21. Mr. Kittleson is currently employed at NKrypt Inc. in Crofton, Maryland. Hanba Decl., Exh. 24 (LinkedIn Profile). Mr. Kittleson has information relevant to SunStone's technology and information relevant to SunStone and F5's sales and marketing efforts related to F5's willful infringement of the Asserted Patents.

- **Neal Ziring**, Technical Director at the NSA in Columbia, Maryland. Hanba Decl., Exh. 25 (LinkedIn Profile). Dr. Ford was in contact with Mr. Ziring regarding SunStone's implementation of the patented technology at the NSA. Ford Decl., ¶ 21. Mr. Ziring has information relevant to SunStone's technology and information relevant to SunStone and F5's sales and marketing efforts related to F5's willful infringement of the Asserted Patents.

Similarly, SunStone was informed on several instances by government officials in other agencies of the similarities between SunStone and F5's technology.  Witnesses with relevant information regarding F5's sales efforts include (in alphabetical order):

- **Patrick Arvidson**, former Director for Defending DoD Networks at Department of Defense.  Hanba Decl., Exh. 26 (LinkedIn Profile).  Dr. Ford was in contact with Mr. Arvidson regarding potential implementation by DoD of Dr. Ford's patented technology.  Ford Decl., ¶ 21.  Mr. Arvidson currently serves at the Department of Defense as Technical Director, Weapons and Space Sector, based in Fort George G. Meade.  Hanba Decl., Exh. 26 (LinkedIn Profile).  Mr. Arvidson has information relevant to SunStone's technology and information relevant to SunStone and F5's sales and marketing efforts related to F5's willful infringement of the Asserted Patents.

- **Ryan Gunst**, former Expeditionary Task Force Commander at Naval Information Warfare Systems Command (formerly SPAWAR).  Hanba Decl., Exh. 27 (LinkedIn Profile).  Dr. Ford was in contact with Mr. Gunst regarding potential implementation by SPAWAR of Dr. Ford's patented technology.  Ford Decl., ¶ 21.  Mr. Gunst is currently stationed in the Washington, D.C. Metro Area for the United States Army, 336th E-MIB Expeditionary Task Force Commander, USFOR-A.  Hanba Decl., Exh. 27 (LinkedIn Profile).  Mr. Gunst has information relevant to SunStone's technology and information relevant to SunStone and F5's sales and marketing efforts related to F5's willful infringement of the Asserted Patents.

- **Dr. Dave Honey**, Director of Science and Technology at the Office of the Director of National Intelligence ("DNI") at the Office of the Director of National Intelligence in Washington, D.C.  Hanba Decl., Exh. 28 (LinkedIn Profile).  Dr. Ford was in contact with Dr. Honey regarding potential implementation by the DNI of Dr. Ford's patented technology.  Ford Decl., ¶ 21.  Dr. Honey currently serves as a Special Assistant at DARPA.  Hanba Decl., Exh. 28 (LinkedIn Profile).  Dr. Honey has information relevant to SunStone's technology and information relevant to SunStone and F5's sales and marketing efforts related to F5's willful infringement of the Asserted Patents.

- **Eli Konikoff**, Chief Engineer Joint Information Environment/Joint Regional Security Stack at Defense Information Systems Agency ("DISA").  Hanba Decl., Exh. 29 (LinkedIn Profile).  Dr. Ford was in contact with Mr. Konikoff regarding potential implementation by DISA of Dr. Ford's patented technology.  Ford Decl., ¶ 21.  Mr. Konikoff has information relevant to SunStone's technology and information relevant to SunStone and F5's sales and marketing efforts related to F5's willful infringement of the Asserted Patents.

- **William Longenecker**, Project Director at the Department of Defense ("DoD") in Annapolis, Maryland.  Hanba Decl., Exh. 30 (LinkedIn Profile).  Dr. Ford was in contact with Mr. Longenecker regarding potential implementation by DoD of Dr. Ford's patented technology.  Ford Decl., ¶ 21.  Mr. Longenecker has information relevant to SunStone's

technology and information relevant to SunStone and F5's sales and marketing efforts related to F5's willful infringement of the Asserted Patents.

- **David Mihelcic**, former Chief Technology Officer at DISA. Hanba Decl., Exh. 31 (LinkedIn Profile). Dr. Ford was in contact with Mr. Mihelcic regarding potential implementation by DISA of Dr. Ford's patented technology. Ford Decl., ¶ 21. Mr. Mihelcic is currently employed as a consultant at DMMI LC in Ashburn, Virginia. Hanba Decl., Exh. 31 (LinkedIn Profile). Dr. Mihelcic has information relevant to SunStone's technology and information relevant to SunStone and F5's sales and marketing efforts related to F5's willful infringement of the Asserted Patents.

- **Damian Schwartz**, former Special Agent at United States Secret Service ("USSS"). Hanba Decl., Exh. 32 (LinkedIn Profile). Dr. Ford was in contact with Mr. Schwartz regarding potential implementation by DHS of Dr. Ford's patented technology. Ford Decl., ¶ 21. Mr. Schwartz is currently employed at Director of Global Security & Investigations at Better.com in New Jersey. Hanba Decl., Exh. 32 (LinkedIn Profile). Mr. Schwartz has information relevant to SunStone's technology and information relevant to SunStone and F5's sales and marketing efforts related to F5's willful infringement of the Asserted Patents.

- **Joel Wall**, Director, Special Projects Office at Department of Homeland Security ("DHS") in New Alexandria, Virginia. Hanba Decl., Exh. 33 (LinkedIn Profile). Dr. Ford was in contact with Mr. Wall regarding potential implementation by DHS of Dr. Ford's patented technology. Ford Decl., ¶ 21. Mr. Wall has information relevant to SunStone's technology and information relevant to SunStone and F5's sales and marketing efforts related to F5's willful infringement of the Asserted Patents.

Not only is the federal court in Norfolk more convenient for these third-party witnesses, but these witnesses are also beyond the reach of the Northern District of California's subpoena power. F5 further ignores the potential impact on any non-party witnesses, shifting its burden by claiming there is no evidence that the United States government witnesses would not provide discovery in California. Mot. at 9-10 ("[T]here is no evidence that the NSA would not provide discovery regarding this alleged commercial embodiment if the case was transferred to California. . . ."). But, F5 did not proffer, by affidavit or other evidence, that the United States government would simply allow its employees to travel to, and testify at, trial in California.

Representatives from these companies and government agencies will be critical witnesses at least in part because SunStone may seek to prove that it would have made sales to these

19

customers had Defendants not willfully infringed.  *See Imagexpo, L.L.C. v. Microsoft Corp.*, 284 F. Supp. 2d 365, 369 (E.D. Va. 2003) ("In patent jurisprudence, the settled rule of damages provides that upon a finding of infringement, the court shall award damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for use made of the invention by the infringer along with interest and costs. . . [I]n cases in which there is a question whether every sale leads to an instance of direct infringement, a patentee must . . . establish the connection between sales and direct infringement.") (internal quotations omitted).

F5 also ignores the relevance of third-party witnesses related to Capital One.  As noted above, Capital One's willful infringement was based on discussions between SunStone and Capital One that included SunStone's confidential information and SunStone's intellectual property. Compl., ¶¶ 37, 197-99; Ford. Decl., ¶¶ 25-27.  These third-party witnesses include:

- **Nami Mufti**, former Head of Security Architecture, Innovation and Acquisitions at Capital One during Capital One's exchange of information with SunStone.  Hanba Decl., at 34 (LinkedIn Profile).  Mr. Mufti is currently the Head of Security and Productivity Engineering at Spotify in Richmond, Virginia. *Id*.  Mr. Mufti has knowledge about Capital One's dealings with SunStone, the SunStone technology, if any, used by Capital One in conjunction with F5, Capital One's reasons that it did "not wish to further engage in discussions with SunStone," and Capital One's business dealings with F5.  Compl., ¶ 199.

- **Tony Spinelli**, former Senior Vice President, Chief Information Security Officer at Capital One.  Hanba Decl., Exh. 35 (LinkedIn Profile).  Mr. Spinelli is currently employed as the Chief Information Officer at Urban One, Inc. in the Washington, D.C. Metro Area. *Id*.  Mr. Spinelli has knowledge about Capital One's dealings with SunStone, the SunStone technology, if any, used by Capital One in conjunction with F5, and Capital One's business dealings with F5. Compl., ¶¶ 37, 197-199.

Based on their involvement with SunStone, Messrs. Mufti and Spinelli likely have information relevant to SunStone's claims against Capital One and F5.

Finally, although F5 has identified two third-party witnesses it expects to have relevant information, Justin Call and Ariya Hidayat, F5 has not included an affidavit from these witnesses suggesting that traveling to Norfolk would be "inconvenient."  Moreover, F5 identifies Mr. Call

20

as having information "regarding Shape's alleged use of 'polymorphism'" but fails to state how Mr. Call's information is not duplicative of, and cannot be obtained from, current F5 employees. Mot. at 9. Similarly, F5 states that Mr. Hidayat "likely has knowledge of the specific features and functionality implemented in the Accused Products," but F5 fails to state how Mr. Hidayat's information is not duplicative of, and cannot be obtained from, current F5 employees. *Id*. In addition, F5 did not articulate which of these witnesses would be necessary witnesses at trial but unwilling to travel to Virginia, nor explained why they would refuse to do so.[5] *See JTH Tax*, 2013 U.S. Dist. LEXIS 84684, at *11-12.

Accordingly, contrary to F5's claim, the presence of numerous individuals and entities in Virginia, in and around the District, weighs heavily against transfer, particularly given that they may be beyond the subpoena power of the Northern District of California.

### 3. The Eastern District of Virginia is More Convenient for Party Witnesses.

Although "the 'convenience of non-party witnesses should be afforded greater weight' than the convenience of party witnesses, and witnesses 'closely aligned with a party,'" the convenience of party-aligned witnesses also weighs against transfer in this case. *JTH Tax*, 2013 U.S. Dist. LEXIS 84684, at *11 (quoting *Samsung Elecs.*, 386 F. Supp at 718). These party-aligned third-party witnesses include one of F5's largest resellers, Carahsoft, based in Reston, Virginia, which has supported F5 for over ten years and "helps to conduct 95% of F5 Networks' federal business," Compl., ¶ 33, and at least thirteen other resellers located in the District. *Id*., ¶ 34. These resellers can be expected to be called to testify as to the infringing use of the technology in Virginia and the Washington, D.C. Metro Area, including as to the federal agency sales that are unique to this area.

---

[5]    F5 has also not provided any information as to whether it has any agreements with Messrs. Call and Hidayat, either consulting or indemnification, as part of their separation from F5.

*See, e.g.*, Hanba Decl., Exh. 3 (Vice Admiral Nancy A. Norton of the Joint Regional Security Stack discussing management procedures); *id.*, Exh. 4 (discussing rollout procedures by The Defense Information Systems Agency); Ford Decl., ¶¶ 18-19. In addition, several third parties located in the District, including some referenced by Dr. Ford, incorporate F5 technology relevant to SunStone's claims of patent infringement and willfulness. *See, e.g.*, Compl. ¶ 35; *id*., Ford Decl., ¶¶ 21-23, 26-27; Hanba Decl., Exh. 39 (summary of witnesses). Indeed, at the time SunStone filed its Complaint, there were at least 19 unique employment openings in Virginia relevant to the F5 Accused Products. Compl., ¶ 35.

Moreover, F5 ignores party witnesses related to Capital One.[6] As noted above, Capital One is not simply a customer of F5. Rather, in 2015, SunStone and Capital One's previous business dealings involved numerous Capital One employees, including key witnesses such as Erik Rolf, former Director, Security Engineering, InfoSec Innovation Labs at Capital One during Capital One's exchange of information with SunStone. Ford Decl., ¶ 27; Hanba Decl., Exh. 36 (LinkedIn Biography). Mr. Rolf is currently the Director, Cloud Security Architecture at Capital One in McLean, Virginia. *Id*. Mr. Rolf and other witnesses at Capital One are likely to have relevant information on the meetings between SunStone and Capital One, Capital One's knowledge of SunStone's Asserted Patents, the technology transferred between Capital One and F5, the process of developing the Accused Capital One Products, and the costs associated with the Accused Products. This information is relevant to SunStone's claims against Capital One and F5.

---

[6] Capital One filed a Motion to Sever and Stay or, Alternatively, Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Dkt. 34.) To the extent the Court grants Capital One's Motion to Sever and Stay, Capital One would become a non-party to the instant litigation with relevant information and key witnesses located in Virginia.

F5 identifies three California-based F5 employees, Xinran Wang, Derek Smith, and Sumit Agarwal as having knowledge regarding the design and development of the Accused Products. Mot. at 7, 9. While these three witnesses could well have information that leads to the discovery of relevant information, there is no reason presented as to why they are likely to be critical witnesses at trial for the simple reason that it is unlikely that there will be a dispute as to what F5 is doing.[7] Rather, the dispute pointed to by F5 will likely be whether what F5 is doing constitutes infringement – an issue that will likely be resolved by claim interpretation and expert testimony and whether F5 (and/or Shape) knew of SunStone's intellectual property. Indeed, the matter of patent infringement is a strict liability offense. *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007).

Moreover, F5 neither articulated which of these witnesses would be necessary witnesses at trial but unwilling to travel to Virginia, nor explained why those particular witnesses would refuse to do so.[8] *See JTH Tax*, 2013 U.S. Dist. LEXIS 84684, at *11-12 ("Notably, Defendant provided no affidavits from potential witnesses in support of his initial motion and memorandum. . . . Although Defendant's reply brief expressly identifies two witnesses that would be called by the defense at trial and includes affidavits from such individuals, the information in such affidavits is both tardy and insufficient to warrant transferring this case."); *Samsung Elecs.,* 386 F. Supp. 2d at 719 ("Additionally, the moving party must demonstrate 'whether that witness is willing to travel

---

[7] SunStone does not dispute that these witnesses will likely be required to participate in the discovery process through depositions. Depositions, however, can occur anywhere and generally are at a location convenient to the witness. *See XPRT Ventures, LLC v. eBay Inc.*, No. 10-595-SLR, 2011 WL 2270402, at *3 (D. Del. June 08, 2011) ("With respect to witnesses, generally the parties agree to take depositions where the witnesses are located (or the court can so order).").

[8] Given that F5 has substantial influence on the party witnesses it has identified, it seems more likely than not that the party witnesses would be willing to attend trial in Virginia if asked by F5.

to a foreign jurisdiction.' Merely stating that potential witnesses reside beyond a forum's subpoena power does little to assist the court in weighing the convenience of the witness and the necessity of compulsory process.") (internal citations omitted).

Finally, Virginia is also more convenient for SunStone, as clearly evidenced by SunStone's decision to file in Virginia, as well as to the extent that numerous third parties related to SunStone, F5, and Capital One are located in and around Virginia. Dr. Ford is the founder and President of SunStone and the sole inventor on the Asserted Patents. Compl., ¶ 41; Ford Decl., ¶ 1. Dr. Ford lives, and SunStone is headquartered, in Jamestown, Ohio, which is less than a 600-mile drive. Ford Decl., ¶ 6; Hanba Decl., Exh. 37.

### 4. To the Extent that Ease of Access to Sources of Proof is Relevant, it Weighs Against Transfer to California.

"[E]ase of access to sources of proof" is a factor that this Court considers as part of the convenience assessment. *See CIVIX-DDI, LLC v. Loopnet, Inc.*, No. 2:12cv2, 2012 U.S. Dist. LEXIS 123821, at *10 (E.D. Va. Aug. 30, 2012). However, the Court has previously concluded that the location of documents "is entitled to little weight" where the documents "can be transported to Virginia or exist[] in digital form." *Pinpoint IT Servs., L.L.C. v. Atlas IT Exp. Corp.*, 812 F. Supp. 2d 710, 720-21 (E.D. Va. 2011) (citing 15 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 3853 (3d ed. 2007)). "[S]ince most records and documents now can be transported easily or exist in miniaturized or electronic form, especially, for example, the ubiquitous e-mail, their location is entitled to little weight." *Id*.

To the extent there are physical documents, they would primarily consist of contracts and communications with actual or potential customers that are digitally stored. In addition, Capital One's records, to the extent not digital, would be available in Virginia.

24

Finally, F5 failed to identify any documents with any degree of particularity, failed to quantify the scope of the relevant documents, and failed to indicate whether the documents are paper or electronic. *See* Dkt. 28-1, ¶ 7 (Schroeder Decl.). F5 failed to identify with particularity any physical documents located outside the Eastern District of Virginia.[9]

## C. The Interests of Justice Favors Keeping This Case Where SunStone Filed It, in the Eastern District of Virginia.

In determining whether the interest of justice weighs in favor of a transfer, this Court considers "the public interest factors aimed at systemic integrity and fairness." *Bluestone Innovations*, 2013 U.S. Dist. LEXIS 57124, at *27 (quoting *Heinz Kettle*r, 750 F. Supp. 2d at 669-70)). "The most prominent elements of systemic integrity are judicial economy and the avoidance of inconsistent judgments." *Id*. Meanwhile, "[f]airness is assessed by considering factors such as docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness with burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." *Id*. at 27-28 (alteration in original).

The most applicable interest of justice factors in this case are the interest in having local controversies decided at home and docket congestion. The other factors have little application to this case.

### 1. Virginia Has an Interest in Having Local Controversies Decided Here, Where the Infringement and Resultant Harm Are Occurring.

F5 emphasizes that the Accused Products were largely developed in the Northern District of California. The Eastern District of Virginia, however, also has a significant interest in the case. Capital One is headquartered in Virginia, giving this District a significant interest in the case.

---

[9]     The fact that F5's counsel is based throughout the country in Palo Alto, California and Washington, D.C., suggests that this case does not involve an unwieldy number of documents or other difficulty in transferring physical evidence that can only be effectively managed in California.

Moreover, several local companies in and around Virginia, as well as the United States government, have a strong interest in this matter through F5 and Capital One's activities. *See* Part II(A)-(C), *supra*. The predominant infringement activity by Capital One and F5, including using and offering for sale the patented technology, is taking place in Virginia. Indeed, a prominent portion of the evidence relevant to F5 and Capital One's willful infringement is located in and around the District. *See* Part IV(B)(2), *supra*. These facts favor keeping SunStone's patent infringement case here. *Hoffmann-LaRoche*, 587 F.3d at 1338.

### 2.  Relative Docket Speed Weighs Against Transfer from the Eastern District of Virginia to the Northern District of California.

"Relative docket speed" is also "a pertinent factor in the transfer calculus." *Convergence Techs. (USA), LLC v. Microloops Corp.*, 711 F. Supp. 2d 626, 643-44 (E.D. Va. 2010). According to the Federal Court Management Statistics published annually by the Administrative Office of United States Federal Courts, the Eastern District of Virginia has the shortest median amount of time from filing to disposition of a civil case, with a median time from filing to disposition of six months, and the shortest time from filing to trial of 11.2 months. Hanba Decl., Exh. 38 at 25. Meanwhile, the Northern District of California ranks 80th in terms of median time from filing to disposition of a civil case, with a median time of 11.4 months to disposition, and 44.5 months from filing to trial, which ranks 37th. *Id*. at 66.

SunStone is a small company that has experienced extreme hardship due to the willful infringement by F5 and Capital One. The fact that docket speed in the Eastern District of Virginia is twice as fast as that of the Northern District of California also weighs in favor of keeping this case in the Eastern District of Virginia.

26

## V.    CONCLUSION

F5 has not met its burden of showing that the balance of hardships clearly favors transfer. At most, F5 has shown that a transfer would merely shift inconvenience from one party to another without actually improving convenience.  In fact, transfer would shift inconvenience from a few F5 employees to multiple third parties in Virginia and the surrounding regions, including the United States Government.  Not only would California be inconvenient for many of these witnesses, but it would also make many of them unavailable.  Because the relevant factors here weigh in favor of denying the request to transfer, SunStone respectfully requests that this Court deny the Motion to Transfer.

Dated: April 22, 2021

Respectfully Submitted,

SunStone Information Defense, Inc.

*By Counsel*

  /s/
William R. Poynter (VSB No. 48672)
KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach, Virginia 23462
Telephone: (757) 238-6383
Facsimile: (757) 304-6175
Email: wpoynter@kaleolegal.com

Bernard J. DiMuro, Esq. (VSB No. 18784)
Michael S. Lieberman, Esq. (VSB No. 20035)
Jonathan R. Mook, Esq. (VSB No. 19177)
**DiMuroGinsberg P.C.**
1101 King Street, Suite 610
Alexandria, Virginia 22314
Telephone: (703) 684-4333
Facsimile: (703) 548-3181
Email: bdimuro@dimuro.com
          mlieberman@dimuro.com
          jmook@dimuro.com

27

Cecil E. Key, Esq. (VSB No. 41018)
**Key IP Law Group, PLLC**
1934 Old Gallows Road, Suite 350
Vienna, Virginia 22182
Telephone:  (703) 752-6276
Facsimile:  (703) 752-6201
Email: cecil@keyiplaw.com

Of Counsel:

Christopher E. Hanba (pro hac vice)
Cabrach J. Connor (pro hac vice)
Kevin S. Kudlac (pro hac vice)
Jennifer Tatum Lee (pro hac vice)
**Connor Kudlac Lee PLLC**
609 Castle Ridge Road, Suite 450
Austin, Texas 78746
Telephone: (512) 777-1254
Facsimile: (888) 387-1134
Email:  chris@connorkudlaclee.com
        cab@connorkudlaclee.com
        kevin@connorkudlaclee.com
        jennifer@connorkudlaclee.com

*Counsel for Plaintiff, SunStone Information Defense, Inc.*

28

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2021, the attached pleading was filed using this Court's

CM/ECF filing service and, accordingly, a copy was provided to counsel of record.

   /s/_____

William R. Poynter (VSB No. 48672)

KALEO LEGAL

4456 Corporation Lane

Suite 135

Virginia Beach, Virginia 23462

Tele: (757) 238-6383

Fax: (757) 304-6175

wpoynter@kaleolegal.com

29