IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| SUNSTONE INFORMATION DEFENSE, INC.,<br>　　　Plaintiff, | )<br>)<br>)<br>) | |
| 　　　v. | )<br>) | Civil Action No. 2:21CV50 (RCY) |
| F5 NETWORKS, INC. *et al.*,<br>　　　Defendants. | )<br>)<br>)<br>) | |

## MEMORANDUM OPINION

This matter is before the Court on Defendant F5 Networks, Inc.'s Motion to Transfer

Venue Pursuant to 28 U.S.C. § 1404(a) (ECF No. 27).  The Motion to Transfer has been fully

briefed, and the Court dispenses with oral argument because the materials before it adequately

present the facts and legal contentions, and argument would not aid the decisional process.  For

the reasons stated below, the Court will grant Defendant F5 Networks, Inc.'s Motion to Transfer

Venue Pursuant to 28 U.S.C. § 1404(a).

## I. BACKGROUND

Sunstone Information Defense, Inc. ("Sunstone" or "Plaintiff") is a Delaware corporation

located in Carmel, California, with headquarters in Jamestown, Ohio. (Compl. ¶ 1, ECF No. 1;

Resp. in Opp'n. at 4, ECF No. 42.)[1]  Sunstone is a cybersecurity provider, founded in 2011 by Dr.

David Ford, that offers products and services aimed at network and device security. (Compl. ¶¶

41, 44.)  Defendant F5 Networks, Inc. ("F5" or "Defendant F5") is a Washington corporation with

its principal place of business in Seattle, Washington. (Compl. ¶ 2.)  F5 specializes in application

services and application delivery networking, and its technologies focus on the delivery, security,

performance, and availability of web applications. (Compl. ¶ 132.)  On January 24, 2020, F5

---

[1] The Court employs the pagination assigned to all documents referenced herein by the CM/ECF docketing system.

acquired Shape Security, Inc. ("Shape Security"), and the Shape Security team is located in Northern California and Utah. (Mem. in Supp. at 7, ECF No. 28.) Defendant Capital One Financial Corporation ("Capital One" or "Defendant Capital One") is a Virginia corporation with its principal place of business in McLean, Virginia. (Compl. ¶ 5.)

Sunstone owns a number of cyber security patents invented by Dr. Ford, including United States Patent No. 9,122,870 (the "'870 Patent"), titled "Method and Apparatus for Validating Communications in an Open Architecture System;" United States Patent No. 10,230,759 (the "'759 Patent"), titled "Method and Apparatus for Varying Soft Information Related to the Display of Hard Information;" and United States Patent No. 10,958,682, titled "Methods and Apparatus for Varying Soft Information Related to the Display of Hard Information (the "'682 Patent")[2] (Collectively the "patents-in-suit"). (Compl. ¶¶ 68, 96; Mot. Leave to Amend Compl. and Related Relief, ¶¶ 2, 4-5, ECF No. 56.) The patents-in-suit were solely invented by Dr. Ford and were generally directed "to systems and methods for validating and/or varying communications between a server and a client (such as a webserver and a web browser) to detect and/or prevent malicious applications from affecting the communications." (Mem. in Supp. at 6, ECF No. 28.)

Sunstone alleges that F5's products, obtained when F5 acquired Shape Security, infringe upon Sunstone's patents-in-suit. (Mem. in Supp. at 7.) Specifically, Sunstone alleges that products: Shape Connect, ShapeShifter Elements, Shape Defense, Shape Enterprise Defense, Shape AI Fraud Engine, and Silverline Shape Defense ("the Accused Products"), infringe upon the patents-in-suit. (Mem. in Supp. at 7; Compl. ¶ 147.)

---

[2] When the Complaint was filed on January 22, 2021, the 682 patent was pending approval as United States Patent Application Serial No. 16/298,537 (the "537 Application"). (ECF No. 56.) On March 23, 2021, the United States Patent and Trademark Office issued United States Patent No. 10,958,682, titled "Methods and Apparatus for Varying Soft Information Related to the Display of Hard Information" (the "682 Patent"). (*Id.*) Plaintiff has since filed an Unopposed Motion and Memorandum in Support of Unopposed Motion for Leave to Amend Complaint and Related Relief. (*Id.*). The undersigned takes no position on the Unopposed Motion for Leave.

## II. PROCEDURAL HISTORY

Plaintiff filed a Complaint on January 22, 2021, in the Eastern District of Virginia against Defendants F5 and Capital One. (ECF No. 1.)  On March 19, 2021, Defendant F5 filed an Answer and Counterclaims (ECF No. 25), and Defendant Capital One filed an Answer to Plaintiff's Complaint (ECF No. 26).  On the same day, Defendant F5 filed a Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (ECF No. 27) and a Memorandum in Support (ECF No. 28).[3]  On April 22, 2021, Plaintiff filed an Opposition to Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (ECF No. 42).  On May 6, 2021, Defendant F5 filed a Reply in Support of its Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (ECF No. 47).

## III. STANDARD OF REVIEW

Under 28 U.S.C. §1400(b), civil actions relating to patent infringement "may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  Furthermore, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).  When deciding whether to transfer venue, the court "must make two inquires: (1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum." *Virginia Innovation Scis., Inc. v. Samsung Elecs. Co.*, 928 F. Supp. 2d 863, 867 (E.D. Va. 2013) (citing *Koh v. Microtek Intern., Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003)).  Although the burden is on the movant to show that transfer is proper under

---

[3] Defendant Capital One filed a Motion to Sever and Stay or Alternatively, Transfer Venue Pursuant to 28 U.S.C. § 1404(a) on April 7, 2021 (ECF No. 34).  Within its Motion to Sever, Defendant Capital One joined Co-Defendant F5's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (ECF No. 27).  However, the undersigned takes no position on Defendant Capital One's Motion to Sever and only addresses the Motion to Sever as it relates to Defendant F5's Motion to Transfer.

§ 1404, district courts have discretion regarding whether to transfer venue and may do so according to an "individualized, case-by-case consideration of convenience and fairness." *Id.* (citing *Stewart Org., Inc. v. Ricoh, Corp.*, 487 U.S. 22, 29 (1988)).

As a preliminary matter, neither party disputes that the infringement claims at issue might have been brought in the Northern District of California.  In the context of a patent dispute, venue is proper in any "judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).  Defendant F5 has a regular and established place of business in the Northern District of California which includes the Shape Security facility located in Santa Clara, California. (Mem. in Supp. at 7.)  Additionally, since acquiring Shape Security, F5 has made, used, and sold the Accused Products in the Northern District of California. (*Id.*)  As such, Plaintiff could have brought its claims of patent infringement in the Northern District of California.  The Court next considers the second prong of the § 1404(a) analysis.

### IV. ANALYSIS

"The second prong of the 1404(a) analysis is a balancing test that weighs '(1) plaintiff's choice of forum, (2) convenience of the parties, (3) witness convenience and access, and (4) the interest of justice.'" *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 994–95 (E.D. Va. 2011) (citing *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010)).

### 1. Plaintiff's Choice of Forum

A plaintiff's choice of forum is generally entitled to substantial weight. *Virginia Innovation Scis., Inc.*, 928 F. Supp. 2d at 869.  "However, the weight accorded to this choice 'varies with the significance of the contacts between the venue chosen by plaintiff and the underlying cause of action.'" *Id.* (citing *Pragmatus*, 769 F. Supp. 2d at 995); *Heinz Kettler GMBH*, 750 F. Supp. 2d at

667 ("That choice is typically entitled to 'substantial weight,' especially where the chosen forum is the plaintiff's home forum or bears a substantial relation to the cause of action.").

Here, Plaintiff does not deny that the Eastern District of Virginia is not its home forum. Plaintiff instead argues that its choice of venue is entitled to substantial weight because there are numerous connections that support litigation in the Eastern District of Virginia and that this district is the "center of the accused activity." (Resp. in Opp'n. at 10.)  Plaintiff points to Defendants' acts of willful infringement in Virginia and the Washington, D.C. metro area, Defendants' substantial presence in Virginia, and third-party witnesses based in the area. (*Id.*)  Plaintiff also asserts that much of Sunstone's marketing and sales efforts, which span decades, were geared towards the Virginia and greater Washington Metro area. (*Id.*)  Conversely, Defendant F5 argues that Plaintiff's connections to the Virginia and greater Washington area that "span decades" only relate to Dr. Ford's work history and his efforts to sell and market Sunstone products. (Reply at 6, ECF No. 47.)  Defendant F5 further argues that Dr. Ford's efforts to market and sell the products have little connection to the infringement claims at issue in this action. (*Id.*)

Here, the Court finds that the Eastern District of Virginia has limited connection to this action and therefore declines to give Plaintiff's choice of forum substantial weight.  First, Plaintiff's purported connections are heavily related to the sales and marketing of Sunstone's products which, by themselves, are insufficient to constitute a substantial relation to this District. *See, e.g.*, *Macronix Int'l Co. v. Spansion Inc.*, No. 3:13CV679, 2014 WL 934521, at *2 (E.D. Va. Mar. 10, 2014) (noting that "sales activity, without more, does not create a connection sufficient to justify imbuing the plaintiff's choice of forum with substantial weight").  Second, Defendant F5's sales activity within the District are inapposite because the Accused Products are sold across the country. (Reply at 7); *Acterna, L.L.C. v. Adtech, Inc.*, 129 F. Supp. 2d 936, 939 (E.D. Va. 2001) (affording the plaintiff's choice of forum "very slight weight" where the defendant's sales were not

"unique to Virginia"). Finally, Plaintiff's assertion that this District is the center of the accused activity is misguided. "In a patent infringement case, the nucleus of operative facts forms at or near the 'center of the allegedly infringing activities,' primarily where the accused products were designed, developed, and manufactured." *Macronix Int'l Co.*, 2014 WL 934521 at *2 (citing *Koh*, 250 F. Supp. 2d at 636). Here, the Accused Products were designed and developed by Shape Security in Northern California. (Mem. in Supp. at 7.) As such, the center of the allegedly infringing activities is Northern California, not the Eastern District of Virginia. Thus, the Court finds that Plaintiff's choice of forum is not entitled to substantial weight, and this factor therefore weighs in favor of transfer.

### 2. Convenience of the parties

"When the plaintiff files suit outside its home district, the convenience of the parties factors more prominently in the calculus." *Macronix Int'l Co.*, 2014 WL 934521 at *5. This prong requires the Court to consider "factors such as the 'ease of access to sources of proof, the costs of obtaining witnesses, and the availability of compulsory process.'" *Heinz Kettler GMBH & Co.*, 750 F. Supp. 2d at 668 (*citing Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 693 (E.D. Va.2007)). Additionally, "the calculus dictates that: '[a] mere shifting of the burden neither weighs in favor of retaining nor of transferring venue.'" *Macronix Int'l Co.*, 2014 WL 934521 at *5 (quoting *Koh*, 250 F. Supp. 2d at 639).

Defendant argues that this factor favors transfer because Sunstone's principal place of business is in Northern California, as is the residence of the founder, Dr. Ford.[4] (Mem in Supp. at 10.) Defendant additionally argues that the "hub" of F5's development and sales activity relating

---

[4] Since filing the Complaint, Dr. Ford and Sunstone have been in the process of moving to Ohio. (Resp. in Opp'n at 4 n.3.) Nonetheless, this move does not change the analysis as Ohio is not in the Eastern District of Virginia and, according to Plaintiff, Sunstone has not been able to formally dissolve the company in California. (*Id.*)

to the Accused Products is in California and that the Northern District of California is also much closer to its headquarters in Seattle, its state of incorporation which is Washington, and the last known location of the former Shape Security CTO in Utah. (*Id.*)  Defendant emphasizes that the center of the alleged infringing activities is the Shape facility in Northern California, and that is also the location of the majority of the evidence, including employee witnesses responsible for the design and development of the Accused Products. (*Id*. at 11.)  Plaintiff argues that to the extent that ease of access to sources of proof is relevant, it weighs against transfer because most documents exist in electronic form and Capital One's non-digital records would be available in Virginia. (Resp. in Opp'n. at 25.)

In actions alleging patent infringement, because "the bulk of the relevant evidence usually comes from the accused infringer, [] the place where the defendant's documents are kept weighs in favor of transfer to that location." *Glob. Touch Sols., LLC v. Toshiba Corp.*, 109 F. Supp. 3d 882, 900 (E.D. Va. 2015) (internal citations omitted).  Here, Plaintiff is now located in Ohio, Defendant F5 is located in California and Washington, and Defendant Capital One is located in Virginia. (Resp. in Opp'n. at 25; Mem. in Supp. at 10.)  Plaintiff's mention of Capital One's non-digitized documents fails to address Defendant's argument that most, if not all, of the evidence related to the Accused Products is either in Northern California or much closer to Northern California than Virginia. As the accused infringer, Defendant F5 keeps most of its documents in Northern California, and it is much more convenient for relevant F5 employees located in Washington or Utah to travel to California than to Virginia. In contrast, the one party that Plaintiff points to as located in Virginia, Capital One, joins in Defendant F5's motion to transfer this action to the Northern District of California. (Mem. Supp. Mot. Stay at 14, ECF No. 35.) Therefore, this factor weighs strongly in favor of transfer.

### 3. Witness Convenience and Access

"The convenience of the witnesses is of considerable importance in determining whether a transfer of venue is appropriate under Section1404(a)." *Glob. Touch Sols.*, 109 F. Supp. 3d at 899 (internal citation omitted). The party that is "asserting witness inconvenience 'has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience.'" *Virginia Innovation Scis., Inc.*, 928 F. Supp. 2d at 870 (internal citation omitted). However, in patent cases, it is "permissible to infer, absent any contrary evidence from the non-movant, that witnesses are located at or near the center of the allegedly infringing activities and that witnesses involved in the *design and manufacture* of the accused products are material." *Glob. Touch Sols., LLC*, 109 F. Supp. 3d at 900 (emphasis in original). Further, "the convenience of non-party witnesses should be afforded greater weight [than the convenience of party witnesses] in deciding a motion to transfer." *Id.* (citing *Samsung Elecs. Co., Ltd. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 719 (E.D. Va.2005)).

Defendant F5 argues that key witnesses who were involved in the allegedly infringing activities are concentrated in or near California. (Mem. in Supp. at 12.)  Additionally, F5 asserts that Sunstone has no employees or physical presence in Virginia and allegations that the parties' customers reside in this District are too vague and tenuous to tie the case to this District. (*Id.* at 13.)  F5 further argues that Sunstone's reliance on "cherry-pick[ed] F5 customers and resellers located in this District," who use the accused infringing method, is not enough to establish a "meaningful connection" to the forum because F5 has customers and resellers across the country. (Reply at 11.)  F5 argues that Sunstone's reliance on Capital One is "similarly misguided" because Capital One is merely a customer that purchased the Accused Products. (*Id.*)  In support of these arguments, F5 points to Sunstone's Complaint which alleges that Capital One infringes the patents-

in-suit "based on the features and functionality of F5's Accused Products." (*Id.*) F5 also points to allegations in Capital One's pending motion to sever and stay based on the customer suit exception; Capital One alleges that the information that is relevant to the alleged infringement is in F5's custody and control in California. (*Id.* at 12; Mem. Supp. Mot. Sever at 2-5, 14, ECF No. 35.)

Plaintiff argues that F5 and Capital One are willfully infringing in this District by offering and performing services that infringe Sunstone's asserted patents and that the recipients of these services—including the United States government—are key witnesses that Sunstone will use to prove willful infringement at trial. (Resp. in Opp'n. at 13.) Plaintiff also lists a number of F5's customers and resellers and the relevant information that they would allegedly provide. (*Id.* at 14-16.) Additionally, Plaintiff argues that its efforts to market and sell Sunstone's products have taken place in Virginia and the Washington, D.C. metro area. (*Id.* at 15.) Plaintiff claims to have been informed by third parties of the similarities between Sunstone's products and the Accused Products while in the same area. (*Id.*) Plaintiff alleges that witnesses from these third-party companies will be crucial witnesses for Sunstone's willfulness case in showing that Shape knew of Sunstone's intellectual properties. (*Id.*) Plaintiff then lists various potential witnesses that were in contact with Dr. Ford regarding Sunstone's products, assisted Sunstone in coordinating product sales to potential customers in Virginia and the Washington, D.C. metro area, and former and current NSA and federal government employees.[5] (*Id.* at 15-20.) Plaintiff asserts that these potential witnesses based in the Eastern District of Virginia and the surrounding area weigh heavily against transfer.

The movant normally bears a high burden when demonstrating that the §1404 factors favor transfer. *Glob. Touch Sols., LLC*, 109 F. Supp. 3d at 899. However, since Plaintiff's forum choice

---

[5] Plaintiff alleges that the NSA is a "commercial embodiment of the Asserted Patents" and that these government agencies were contacted by Shape in direct competition with Sunstone. (Resp. in Opp'n.at 17-18.)

is afforded limited weight, "the metaphorical 'bar' has been lowered." *Id.* Here, Defendant F5 has met that bar. Although Plaintiff lists a myriad of potential witnesses that were in contact with Dr. Ford or assisted in sales of Sunstone's products, these potential witnesses are insufficient to justify retaining this action in this District. As a general rule in patent infringement actions, "the preferred forum is that which is the center of the accused activity." *Id.* Furthermore, "the trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." *Id.* (citing *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999)). As previously stated, the center of the accused activity is Northern California where the Accused Products were designed and developed. *See GTE Wireless, Inc.*, 71 F. Supp. 2d at 519 (transferring the case to California as "the central issues concerning the accused activity revolve around the cellular phones which are designed and manufactured in San Diego.")

Moreover, the location of both Sunstone and F5 customers, while relevant, does not prevent transfer. *StarTrak Info. Techs., LLC v. Mark-It Servs., Inc.*, No. 3:14CV384, 2014 WL 4445266, at *2 (E.D. Va. Sept. 9, 2014) (finding that defendant's customers located in Virginia who had used the accused infringing method were not enough to establish a meaningful connection to Virginia when the accused instrumentality was designed, developed, and had always been operated out of New Jersey). The Court finds no reason to disregard the undisputed fact that the Accused Products were designed and developed in California and the importance of having the trier of fact as close as possible to the milieu of the infringing device and the hub of activity centered around its production. Accordingly, this factor weighs heavily in favor of transfer.

### 4. The Interests of Justice

Finally, the Court considers the interests of justice. This factor ultimately "encompasses public interest factors aimed at 'systemic integrity and fairness,' with the most prominent considerations being 'judicial economy and the avoidance of inconsistent judgments.'" *Virginia*

*Innovation Scis., Inc.*, 928 F. Supp. 2d at 872 (internal citations omitted). Analysis of this factor also includes a number of considerations.[6] Relevant here are docket conditions and the interest of having local controversies decided at home.

Defendant F5 argues that the interest of having localized controversies resolved at home weighs heavily in favor of transferring this action because California has a much stronger factual connection to the controversies in this case. (Mem. in Supp. at 16; Reply at 15.) Sunstone and Shape Security have called California "home" from their respective founding in 2011 through the filing of the Complaint, California is where the patents-in-suit were developed, and Shape Security—which is now a subsidiary of F5—is located in California. (Reply at 15.) Defendant also asserts that docket speed is a relatively minor consideration since Plaintiff lacks legitimate ties or special connections to this District. (*Id* at 16.) Plaintiff argues that the interests of justice weighs against transfer because Virginia has an interest in having local controversies decided here where the infringement and resultant hardships are occurring and the faster docket speed of this District weighs in favor of keeping this action in the Eastern District of Virginia. (Resp. in Opp'n. at 26-27.)

This factor, the interest of justice, weighs in favor of transfer. First, it is apparent that this controversy is not "local" to Virginia as the Accused Products were designed and developed in California, and F5 has customers and resellers all over the country. Even the patents-in-suit were allegedly invented and developed in California. (*See* ECF No. 1-9, 1-10.) Second, docket speed

---

[6] Analysis of this factor also includes the following considerations: (1) the pendency of a related action, (2) the court's familiarity with the applicable law, (3) docket conditions, (4) access to premises that might have to be viewed, (5) the possibility of an unfair trial, (6) the ability to join other parties, (7) the possibility of harassment, and (8) the interest of having local controversies decided at home. *Virginia Innovation Scis., Inc.*, 928 F. Supp. 2d at 872. However, many of these considerations are inapplicable to this case. There are no related actions currently pending in any other district. Additionally, this case arises under federal patent law, accordingly, the Court's familiarity with the applicable federal patent law is irrelevant. Finally, there are no facts before the Court that suggest premises would need to be viewed, concerns of an unfair trial, the ability to join other parties, or the possibility of harassment.

does little to move the needle away from transfer.  This is especially the case when all of the other factors would reasonably result in transfer. *GTE Wireless, Inc.*, 71 F. Supp. 2d at 520 ("Docket conditions, although relevant, are a minor consideration when all other reasonable and logical factors would result in a transfer of venue. If the rule were otherwise, every company with a national market and a patent infringement claim would be entitled to venue in this District."); *Macronix Int'l Co.*, 2014 WL 934521 at *7 ("If multiple factors favor transferring venue, then the mere fact that the plaintiff could obtain a trial and judgment sooner in the plaintiff's chosen venue than in another does not preclude transfer.") Consequently, this factor supports transfer.

In sum, Defendant has satisfied its burden of proving that transfer to the Northern District of California is warranted based on the relevant factors in this case.  As detailed above, Plaintiff's initial choice of venue is not entitled to substantial weight, the convenience of the parties and witnesses favor transfer because California is the center of the allegedly infringing activities, and the interest of justice also tips in favor of transfer.  As such, § 1404(a) warrants transfer of this action to the Northern District of California.

### V. CONCLUSION

For the foregoing reasons, the Court will grant F5 Network, Inc.'s Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (ECF No. 27) and will direct the Clerk to transfer this action to the Northern District of California.

An appropriate Order shall issue.

_____
/s/
Roderick C. Young
United States District Judge

Norfolk, Virginia
Date:  December 7, 2021

12